The next argument on the calendar for today will be in case number 23-230, Yerdon v. Poitras. Mr. Yerdon, whenever you're ready. Good morning. My name is Edward Yerdon. I'm a project management certified professional, PMP, and I also have a cognitive disability and ADHD. And I'd like to say that the documents for how to do pro se that were given to me, the instruction book, were a little bit of a challenge for me. My case is about discrimination that happened while I was working at the DMV as a project manager. And it was dismissed on grounds of not serving process correctly. However, I did file a process using a professional process serving company known as Servico. And I was asked to do it twice, and I did it the second time as well. Servico informed me that the DMV during the COVID era was requiring that all process would be filed by putting the documents into a drop slot. And as from my understanding, I was trying to serve the DMV, and I was trying to serve a couple individuals who worked in the building at the DMV. And I told them that, and that's what they did. Did Servico make any representation to you about their knowledge of the service requirements during COVID? Did they tell you they know how to do it? Yes. They gave me an email. I had them send me an email, and I added that email to the docket as well. And then are you able to be reimbursed by Servico for their failure of service? How are they working? Do they know that you're here because of a service problem? I didn't know that I was— No, it's not a—I'm just asking the question. There's not a what you were supposed to do or you're not supposed to do. They don't know. They don't know. Okay. I paid $80 twice, so I did, and the affidavits that they gave me were filed on the docket as well. Do you know how much they charged you? I believe it was $80. So $80 twice? Yes. So they messed up the first time, and then the district gave you 60 days to try it again. Did you do anything differently the second time? The second time I told them to also mail it. I told them to do all the different ways possible to do it. However, I believe that, you know, they were serving the DMV, and I believe that since New York State is a large organization that, you know, it might have gotten to the legal department of the DMV, but then they didn't communicate properly with the attorney general's office. So, yeah, that's all I can assume that happened there. Did you give them a copy of the order dismissing the case, the first dismissal? To the Servico? To Servico. No. Okay. I didn't know I was supposed to do that. I suppose it would have been helpful. Actually, I did tell them that they were asking to serve it again and that it wasn't the proper. What they'd done was improper. Yes. I did tell them that, but then I didn't give them a document to tell them, to show them. But you conveyed the substance of it. Yes. Is there anything else you want to tell us, sir? Let me think for a minute. We have to focus just on that issue. You know, the merits of your case are a separate question. Yes. It wasn't thrown out on that basis. Right. It was not thrown out on basis of merit. That's all. Thank you, sir. Thank you. You're reserved a minute for rebuttal, too. Mr. Wagner. You're putting a lot of eggs in the service basket. Is that correct? That is correct, because that is, or excuse me, Doug Wagner on behalf of the Appalachian. You were clearly on notice, right? You filed two motions to dismiss, including one on merits ground. Right? That is correct. We included merits on both of our motions to dismiss. Okay. And what do we do about the fact that there was a whole lot of confusion about the DMV being closed during COVID? A security guard told him, told the service processor he didn't do it himself. He hired a reputable service processor that he paid money for. What are we supposed to do with that? A number of answers on that point. First, about the security guard outside and then about the breadth of the district court's discretion. So the security guard in this instance works for OGS, which is the Office of General Services, not the DMV. They patrol outside all of the buildings. And so the DMV buildings in this case were closed. But how was the service processor supposed to know that somebody telling them to do that wouldn't ultimately be considered an agent? During the COVID, when they weren't, the service processor, they weren't said, I don't know, maybe you could, or you need to call this number to be sure. Your Honor, just because that the person was outside the building doesn't bestow upon them the, it's sort of an equitable stop argument. We are not a stop from arguing that just because they were told outside the building, therefore we waived service. The DMV never accepted Dropbox service whatsoever during COVID. And service by mail was proper the entire time. And so professional service processors can look at CPLR 307 and CPLR 308 and know there's no Dropbox provision here. And there's no official public register notice from the DMV. During COVID and after COVID, the public register says that you can serve at Swan Street, which is the main headquarters in person. And then also the CPLR allows mail service. Okay, so what are we supposed to make of those ankle factors? So they all, so the necessary party have actual notice, which you clearly did because you responded twice. The government suffers no prejudice from a technical default in service. You didn't because you got it. There's no, there's a justifiable excuse for the failure to serve properly. He had a process server. It was in the middle of a pandemic. There was a whole lot of confusion. And the plaintiff would be severely prejudiced if the case were dismissed. Your Honor, first of all, the Zankin factors have been somewhat superseded. This court in a decision called Zapata, it's cited in the major case, which we cite. And the citation is 502 F third. I'm aware of the case. So second of all, this court has never said that the factors are mandatory. All of the court has said is that there must be some showing on the record that the district court weighed the equities. And here the district court did weigh the equities. He noted that he was pro se. He noted that they were using the process server. And he noted that COVID had made things more complicated. And in the district court's discretion, which this court has called this decision purely discretionary. He decided that the proper course would be 160 day extension. And then in his order, he said no further extensions will be given. And so that becomes a court order that would supersede any later discretionary ballots. Did you guys provide guidance to the public on how to do in-person service during COVID? There was no official guidance to my knowledge. Okay. Then how do we know that giving it to the asking the security guard and the security guard telling them putting it in the drop box wasn't official? If you didn't have another official way? So the way that we know is because only people who are authorized by the DMV to give waivers of service are so authorized. And so a process server should know. How is the public the process server was supposed to know and the process server didn't? Yes. Doesn't that cut against you? The fact that like someone with the kind of expertise of serving process thought that during the pandemic, this was an appropriate way to do service. Your Honor, I would not say so when I would say there was plenty of cases that were served properly during COVID and they're being litigated now. And so just because there was one error by one process server does not dispose of the case. And I would also note that this was a factor that was taken into account by the district court. And so it was already weighed into the analysis as to what was the proper course of action. Just one other quick note in terms of the technical defects of the service. This court in a case that's called Morris against United States 627 F Appendix 21 has already decided that good cause or excusable neglect does not rise from technical defects. And so if the court were to consider that in this analysis, we would submit that that does not merit a reversal. Thank you, counsel. Thank you. Mr. Yerden, you have reserved a minute for rebuttal. Thank you. I actually worked at the Swan Street location that he was mentioning, and I told them that that's where that they had to serve process. And you see, it's kind of like making it like a misnomer. One would assume that, you know, that they tried to serve process at a random DMV branch, but that's not the case. I definitely told them it was Swan Street and that's where the headquarters of DMV is. That's where I work. So and that's also where Elizabeth Vermont is located, one of the defendants. Not just that, but I, you know, I know that the court will say that that the the plaintiff had to the person serving process had to do due diligence in order to do it. And all the cases that I saw were that I was looking at show that the other people did not do due diligence. They didn't have a professional or they didn't do it within the time frame. So that's all I can say. I just feel like justice, you know, if I don't if I don't win today, then I feel like, you know, justice will just not be served. I mean, I have a disability and I was discriminated against. Thank you. Thank you, Mr. Yerden. Thank you, counsel. We'll take the case under advisement.